**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
Telephone: (212) 223-0400
Facsimile: (212) 753-0396
Nathan Schwed

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| | : | |
| | : | Case No. 18-45284 (NHL) |
| SEASONS CORPORATE LLC, *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| | : | |
| Debtors.[1] | : | |

-----------------------------------------------------------------x

**DEBTORS' AMENDED MOTION FOR ORDERS PURSUANT TO SECTIONS 105(a), 363, 365 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006: (A)(i) ESTABLISHING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF CERTAIN OF THE ASSETS OF THE DEBTORS, (ii) APPROVING THE FORM AND MANNER OF NOTICES, (iii) APPROVING THE ASSET PURCHASE AGREEMENT SUBJECT TO HIGHER AND BETTER OFFERS AND (iv) SETTING A SALE HEARING DATE; AND (B)(i) APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (ii) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (iii) GRANTING RELATED RELIEF**

**TO THE HONORABLE CARLA E. CRAIG,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Blue Gold Equities LLC (7766), Central Avenue Market LLC (7961), Amsterdam Avenue Market LLC (7988), Wilmot Road Market LLC (8020), Seasons Express Inwood LLC (1703), Seasons Lakewood LLC (0295), Seasons Maryland LLC (1895), Seasons Clifton LLC (3331), Seasons Cleveland LLC (7367), Lawrence Supermarket LLC (8258), Upper West Side Market LLC (8895) and Seasons Corporate LLC (2266). The mailing address for the Debtors, solely for purposes of notices and communications, is: 5 Doughty Boulevard, Inwood, NY 11096.

Seasons Corporate LLC ("Corporate") and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and through their proposed counsel, Zeichner Ellman & Krause LLP, hereby submit this amended motion (the "Amended Motion") for entry of orders:

a.  Substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order") (a) establishing bidding procedures and bid protections (the "Bidding Procedures") substantially in the form attached to the Bidding Procedures Order as Schedule 1, (b) setting a hearing on November 29, 2018 (the "Sale Hearing") to consider approval of an amended sale transaction (the "Amended Sale Transaction"), and (c) approving the form and manner of notice of sale (the "Sale Notice"), substantially in the form attached to the Bidding Procedures Order as Schedule 2;

b.  Substantially in the form attached hereto as **Exhibit B** (the "Sale Order") (a) approving the Amended Asset Purchase Agreement, dated October 15, 2018 (the "Amended APA"), substantially in the form attached hereto as **Exhibit C**, among the Debtors and SSNS Express LLC (the "New Purchaser"), pursuant to which the Debtors propose to sell certain of their assets to New Purchaser free and clear of any and all liens, claims and encumbrances (other than certain liens noted in the Amended APA (the "Excepted Liens")), subject to higher and better offers (b) approving certain procedures in the Amended Sale Transaction with respect to the Debtors' assumption and assignment of certain executory contracts and unexpired leases, and approving the form and manner of notice of assumption and assignment of executory contracts substantially in the forms attached hereto as **Exhibits D and E**, (c) approving the sale of the Acquired Assets (as defined in the Amended APA) free and clear of liens, claims and encumbrances (other than the Excepted Liens), and (d) granting related relief.

In support of the Amended Motion, the Debtors incorporate the statements contained in the Declaration of Joel Getzler pursuant to Local Bankruptcy Rule 1007 dated September 16, 2018 [Docket No. 4] (the "First Day Declaration") and respectfully represent and allege as follows:

## PRELIMINARY STATEMENT

The Debtors' principal business is the ownership and operation of eight (8) retail kosher food stores under the name of "Seasons" in New York, New Jersey and Maryland. Blue Gold Equities LLC, ("Blue Gold") operates a store in Queens, New York, Central Ave. Market LLC ("Central Avenue") operates a store in Lawrence, New York, Amsterdam Ave. Market LLC

("Amsterdam Avenue") operates a store in New York, New York, Wilmot Road Market, LLC ("Wilmot Road") is a tenant under a lease for a store in Scarsdale, New York which is on the verge of opening, Seasons Express Inwood LLC ("Inwood") operates a store in Inwood, New York, Seasons Lakewood, LLC ("Lakewood") operates a store in Lakewood, New York, Seasons Maryland LLC ("Maryland") operates a store in Baltimore, Maryland[2], Seasons Clifton LLC ("Clifton") operates a store in Clifton, New Jersey, Lawrence Supermarket LLC ("Lawrence") is the nominal tenant under a lease for the Lawrence store operated by Central Avenue, and Upper West Side Supermarket LLC, ("Upper West Side", and collectively with Blue Gold, Central Avenue, Amsterdam Avenue, Wilmot Road, Inwood, Lakewood, Maryland, Clifton and Lawrence the "Operating Entities") is the nominal tenant for the New York store operated by Amsterdam Avenue.[3]

The consummation of value-maximizing, job-preserving, going-concern sales of the Debtors' stores is the cornerstone of these Chapter 11 Cases. To that end, the Debtors have identified the New Purchaser, who is willing to expeditiously consummate the transaction set forth in the Amended APA providing for the sale of substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances (other than the Excepted Liens) to the New Purchaser for a cash purchase price of $10,250,000 (the "Cash Purchase Price") plus assumption of the Cure Costs under the Transferred Contracts not to exceed $3,450,000 (the "Assumed Cure Costs"). The

---

[2] Seasons Property Management LLC ("Seasons Property") owns the building and the parking lot adjacent to the Maryland store (the "Maryland Property"). Seasons Property did not file a voluntary petition for relief under chapter 11 on the Petition Date but may file such a petition. The Amended APA contemplates that Seasons Property will sell the Maryland Property to the New Purchaser.

[3] Debtor Seasons Cleveland LLC ("Cleveland") is the tenant for a store that is under construction in Cleveland, Ohio. The Debtors have moved to reject the Cleveland lease and do not propose to sell any of Cleveland's assets.

Amended Sale Transaction is subject to higher and better offers pursuant to the Bidding Procedures. The Debtors believe that the timely consummation of the Amended Sale Transaction is in the best interests of the estates and their creditors.

For all of these reasons and those set forth below, the Debtors respectfully request approval of the Amended Motion and authority to consummate the Amended Sale Transaction or a better transaction.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105, 363, 365 and 503 of Title 11 of the United States Code (the "Bankruptcy Code") rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 6004-1, 6006-1 and 9006-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), and Administrative Order No. 557 of the Bankruptcy Court for the Eastern District of New York ("Administrative Order 557").

## BACKGROUND

A.      **Bankruptcy Cases**

9.      On September 16, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

10.     The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.     No trustee or examiner has been appointed in these Chapter 11 Cases. A committee of creditors has been appointed and has selected counsel.

12.     On September 18, 2018, the Court entered an Order providing for joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 19].

13.     The Court and interested parties are respectfully referred to the First Day Declaration for a detailed discussion regarding the Debtors, their operations, and the events leading to the filing of the Bankruptcy Cases.

B.     **Secured Debt**

14.     In February 2018, SKNY LLC ("SKNY") loaned $1 million (the "February 2018 Secured Loan") to the Operating Entities, evidenced by a promissory note and a security agreement ("Prepetition Security Agreement") pursuant to which the Operating Entities granted SKNY a security interest in all their assets.  In March 2018, SKNY loaned an additional $1 million to the Operating Entities subject to the Prepetition Security Agreement and the original promissory note was replaced by an Amended and Restated Promissory Note in the amount of $2 Million (the "March 2018 Secured Loan"). On September 5, 2018, pursuant to a Second Amended and Restated Promissory Note and the Prepetition Security Agreement, SKNY made an additional $1,000,000 available to the Debtors and funded $250,794.64 for payroll and $400,000 (the "September 5, 2018 Secured Loan") to the Debtors to provide them with the necessary funds to retain Zeichner Ellman & Krause LLP as counsel to the Debtors, Getzler Henrich & Associates LLC ("GHA") as restructuring consultants to the Debtors (as well as retention of Joel Getzler as Chief Restructuring Officer and other GHA employees) and Omni Management Group as Claims Agent for the Debtors.  On September 7, 2018, SKNY advanced another $165,000 for the purpose of allowing the Debtors to pay insurance premiums, which were due on September 10, 2018 (the "September 7, 2018 Secured Loan", and collectively with the February 2018 Secured Loan, the March 2018 Secured Loan and the September 5, 2018 Secured Loan, the "Prepetition Secured Loan").

15.     As of the Petition Date the Operating Entities owed $3,250,000 to SKNY on account of the Prepetition Secured Loan (the "Prepetition Indebtedness").

16.     The Prepetition Indebtedness is secured by a blanket lien on substantially all of the Operating Entities' assets pursuant to the terms and conditions of the Prepetition Secured Loan documents.

D.     **DIP Financing Facility**

17.     On September 18, 2018, the Court entered an Interim Order authorizing SKNY to provide interim DIP financing under a proposed DIP Facility in the aggregate sum of $3.7 million [Docket No. 14].  On October 5, 2018, the Court authorized an additional interim advance under the SKNY DIP Facility in the amount of $500,000.  On October 11, 2018, the Court authorized an extension of the use of cash collateral until the final hearing on the motion, currently scheduled for October 17, 2018.  At that time, the Debtors' will make a request for a final order authorizing total advances of $6.5 million.

E.     **Pre-Petition Marketing and Sales Process**

18.     The Debtors concluded that it was in the best of interest of the estate and creditors to sell their business assets.  In order to avoid a complete collapse of their business and preserve the value thereof and the jobs of approximately 400 employees, the Debtors determined that they required a substantial DIP financing facility to restock the stores and, thereby, generate store traffic and sales. The Debtors obtained SKNY's pre-petition commitment for a DIP Facility in exchange for which the Debtors agreed to present SKNY as a stalking horse bidder for the Debtors' assets at a price of $12,000,000.  Simultaneous with their bankruptcy filings, the Debtors filed a motion (the "Sale Motion") seeking orders setting procedures for the Initial Sale Transaction in which SKNY would be the "stalking horse" purchaser in a sale subject to higher and better offers, and approving an Asset Purchase Agreement with SKNY (the "SKNY APA"), pursuant to which the

Debtors proposed to sell substantially all of their assets to SKNY and SKNY agreed to assume certain liabilities of the Debtors (the "Initial Sale Transaction") [Docket No. 12].

19.     Prior to the Petition Date, the Debtors had been in discussions with other parties who expressed interest in possibly providing DIP funding and/or being a stalking horse bidder. Shortly before the First Day Hearing, the Debtors obtained a competing offer for a DIP loan and stalking horse bid from DC Brothers II LLC ("DC Brothers"). DC Brothers' stalking horse bid was for $13,000,000 without the payment of the Assumed Cure Costs. The Debtors did not deem the terms of the DC Brothers' DIP loan to be better than the SKNY DIP Facility and, therefore, proceeded with the SKNY DIP Facility.

20.     Thereafter, various parties objected to the Sale Motion. Between October 3 and 5 2018, SKNY, DC Brothers, the Debtors and the Official Committee (the "Committee") of Unsecured Creditors (appointed on September 26, 2018) engaged in negotiations concerning the Sale Transaction. As a result of those negotiations, DC Brothers and TSAAR, LLC ("TSAAR") decided to present a combined stalking horse bid in the sum of $10,250,000 and payment of the Assumed Cure Costs, which included a breakup fee of 3%.

21.     Attached hereto as **Exhibit C** is the Amended APA presented by SSNS Express LLC, the entity formed by DC Brothers and TSAAR to proceed with the stalking horse bid. The Debtors submit that the terms of the Amended Sale Transaction are substantially more favorable to the estate than the terms of the original SKNY APA. Specifically, the Debtors perceive the Amended APA as adding approximately $1.9 million of additional value above the SKNY APA.

## RELIEF REQUESTED

A.      **The Proposed Sale**

22.     The Amended APA sets forth the terms of the sale of certain of the Debtors' assets and business and related transactions, subject to higher and better offers, free and clear of liens,

claims, interests and encumbrances.  Pursuant to the terms and conditions of the Amended APA, the Debtors agreed to sell, transfer and assign to New Purchaser all of their right, title and interest in and to the Transferred Contracts, including leases, and certain inventory, equipment, furnishings, fixtures, customer data, and goodwill related to the following stores (the "Stores"):

| Debtor | Premises Description | Leased/ Owned | Premises Address |
|---|---|---|---|
| Seasons Corporate LLC | Inwood Store | Leased | 5 Doughty Boulevard Inwood, NY 11096 |
| Blue Gold Equities, LLC | Queens Store | Leased | 68-18 Main Street Flushing, NY 11367 |
| Central Avenue Market LLC | Lawrence Store | Leased | 330 Central Ave. Lawrence, NY 11559 |
| Seasons Express Inwood LLC | Inwood Store | Leased | 50 Doughty Boulevard Lawrence, NY 11559 |
| Amsterdam Avenue Market LLC | New York Store | Leased | 661 Amsterdam Ave. New York, NY 10025 |
| Wilmot Road Market LLC | Scarsdale Store | Leased | 1136 & 1104 Wilmot Road Scarsdale, NY 10583 |
| Seasons Clifton LLC | Clifton Store | Leased | 761 Allwood Road Clifton, NJ 07012 |
| Seasons Lakewood LLC | Lakewood Store | Leased | 711 Cedarbridge Avenue, Lakewood, NJ 08701 |
| Seasons Maryland LLC | Maryland Store | Leased | 1630 Reistertown Road Pikesville, MD 21208 |
| Lawrence Supermarket LLC | Tenant of Lawrence Store | Leased | 330 Central Ave. Lawrence, NY 11559 |
| Upper West Side Supermarket LLC | Tenant of New York Store | Leased | 661 Amsterdam Ave. New York, NY 10025 |

23.    In addition to the above, the Amended APA provides for the transfer of the Maryland Property owned by Seasons Property to New Purchaser.

24.    In exchange, New Purchaser has agreed to pay to the Debtors a purchase price of, among other things, $10,250,000 and payment of the Assumed Cure Costs (the "Purchase Price"). Excluded from the definition of Transferred Contracts is Concession Agreements.

25.     The Amended APA requires a closing to occur no later than December 15, 2018 and entitles New Purchaser to certain Bidding Protections (as defined herein).

26.     In addition, New Purchaser may agree to assume the Labor Agreement or meet and confer with the Union representatives and negotiate in good faith to reach mutually satisfactory modifications to the Labor Agreement and enter into a Modified Labor Agreement with the Union. If New Purchaser does not reach an agreement with the Union on a Modified Labor Agreement, then New Purchaser has the right to deem the Labor Agreement an Excluded Asset.

27.     As a result, the Amended Sale Transaction provides for the continuation of business operations, preservation of attendant jobs to the extent employees of the Debtors become employees of New Purchaser, most of which are expected to be offered employment by the New Purchaser, and maximization of value for the benefit of the Debtors, their creditors and the estates.

B.     **Extraordinary Provisions**

28.     In accordance with General Order 557, the Debtors disclose the following Extraordinary Provisions provided for in the Amended APA:

(a)     Agreements with Management:  New Purchaser intends to offer employment to Mayer Gold, an insider of the Debtors.

(b)     Deadlines that Effectively Limit Notice: The Amended APA includes provisions requiring entry of the Bidding Procedures Order on or before October 18, 2018, and entry of the Sale Order on or before November 30, 2018.  The Amended APA allows New Purchaser to terminate the Amended APA if either of these benchmarks are not met.

(c)     Record Retention: After the Closing Date, New Purchaser shall provide Sellers and their representatives reasonable access to the books and records of Sellers included in the Acquired Assets during normal business hours and on reasonable prior notice, to enable Sellers to prepare tax returns, deal with tax audits and administer claims in the Chapter 11 Cases.  The Debtors believe these provisions are sufficient to allow the Debtors to administer their estates.

(d)     Use of Proceeds:  Other than payment of the Bidding Protections, if any, at the Closing Sellers shall be required to use the

proceeds of the Purchase Price to satisfy in full Sellers' obligations under the DIP Financing Facility.

(e)    <u>Successor Liability</u>: The proposed form of Sale Order contains findings and provisions limiting New Purchaser's successor liability.

(f)    <u>Relief from Bankruptcy Rule 6004(h)</u>: The proposed form of Sale Order contains a waiver of the stay imposed by Bankruptcy Rule 6004(h).   The Debtors submit such relief is appropriate under the circumstances.

(g)    <u>Sale and Release of Avoidance Actions</u>.  The Amended APA provides for the sale of Avoidance Actions to the New Purchaser, provided, however, that simultaneously upon acquisition of such Causes of Action, New Purchaser and Sellers shall waive and release any and all such Causes of Action.

## PROPOSED BIDDING PROCEDURES, AUCTION AND AUCTION PROCEDURES

29.    Consistent with the Amended APA, the Debtors are proposing the Bidding Procedures, which are designed to maximize the value of the Acquired Assets for the Debtors' estates, creditors and other interested parties.  Specifically, as discussed in more detail below, the Amended Sale Transaction is subject to higher and better offers.  In that regard, New Purchaser has expended considerable time, effort and resources conducting due diligence, negotiating the Amended APA, and taking steps necessary to acquire necessary licenses, permits and insurance if it becomes the successful purchaser of the Acquired Assets.  Accordingly, the New Purchaser required certain break-up fees and expenses reimbursements to the extent it is outbid.

30.    The Debtors propose that competing offers ("<u>Competing Offers</u>") for the Acquired Assets be governed by the following Bidding Procedures:[4]

---

[4] The summary description of the Bidding Procedures provided herein is provided for the convenience of the Court and parties in interest.  To the extent that there are any discrepancies between this summary and the Bidding Procedures Order, the terms and language of the Bidding Procedures Order shall govern.  Unless otherwise defined herein, capitalized terms defined in the Bidding Procedures shall have the meaning ascribed to them in the Bidding Procedures Order or the Amended APA.

(a)    Any entity that wishes to make a bid for all or a portion of the Acquired Assets (the "Competing Bidder") must provide the Debtors with sufficient and adequate information to demonstrate, to the absolute satisfaction of the Debtors, that such entity (a) has the financial wherewithal and ability to consummate the Amended Sale Transaction, including evidence of adequate financing and any proposed conditions to Closing and (b) can provide all non-debtor contracting parties to the Transferred Contracts with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.   The bid presented by the Competing Bidder (i) will be on substantially the same terms and conditions as the Amended APA except for price; (ii) will require the payment of a closing cash payment of not less than $10,911,000, plus payment of the Assumed Cure Costs (the "Minimum Bid"); and (iii) will be accompanied by an earnest money deposit of 10% of the initial purchase price set forth in any Modified Purchase Agreement, plus the amount of the Bidding Protections (the "Deposit").   Any bid satisfying such criteria shall be designated as a "Qualified Bid."   Except as provided for in the Amended APA, the bid must not contain any contingencies of any kind, including, but not limited to (a) obtaining financing or shareholder, board of directors or other approval, or (b) the outcome or completion of due diligence.   Each Competing Bidder must also affirmatively acknowledge that the Competing Bidder (x) had an opportunity to conduct due diligence regarding the Acquired Assets prior to making its offer and does not require further due diligence, (y) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and (z) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in the Bidding Procedures.

(b)    Competing Offers must (a) be in writing and (b) be received by proposed counsel to the Debtors, Zeichner Ellman & Krause LLP, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036, Attn: Nathan Schwed so as to be actually received no later than **Noon (prevailing Eastern Time) on November 21, 2018** (the "Bid Deadline").   Parties who do not submit Competing Offers by the Bid Deadline shall not be permitted to participate at the Auction.

(c)    Competing Offers must be accompanied by the Deposit in the form of a wire transfer or a certified check payable to Zeichner Ellman & Krause LLP, as attorneys.   All such deposits shall be retained by the Debtors pending the hearing to consider the Amended Sale Motion and shall be returned to a Competing Bidder (x) as soon as practicable if the Competing Bidder is not determined to be a Qualified Bidder or (y) no later than five (5) business days after entry of the Sale Order if the Competing Bidder is deemed to be a Qualified Bidder (who has not otherwise forfeited

its Deposit), but is not the Successful Bidder or the Backup Bidder; provided, however, that in the event New Purchaser is not the Successful Bidder, its Deposit shall be returned to it promptly upon termination of the Amended APA, but in no event later than five (5) business days from the date of that termination. The Debtors will maintain any Deposit in a non-interest bearing account.

(d)     Any Competing Offer by a Qualified Party conforming to the within requirements shall be considered at the auction to be held at the Offices of Zeichner Ellman & Krause LLP, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 commencing on **November 27, 2018, at 10:00 a.m. (EST)**, or in such manner and at such alternative location as the Debtors may determine or the Court may direct (the "Auction").

(e)     The Debtors shall, after the Bid Deadline and prior to the Auction, in consultation with the Creditors' Committee evaluate all bids received, and determine which bid reflects the highest or best offer for the Acquired Assets. The Debtors shall announce such determination at the commencement of the Auction and then the Debtors shall conduct the Auction among the parties submitting Competing Offers to determine if any higher or better offer might be obtained. Any further bids for all of the Acquired Assets made at the Auction shall be in increments of at least $100,000 greater than the preceding bid.

(f)     The Amended APA shall be deemed a Qualified Bid and the New Purchaser shall be deemed a Qualified Bidder. If no Qualified Bid other than New Purchaser's is submitted by the Bid Deadline, the Debtors shall not hold the Auction, but may proceed with the Sale Hearing and seek approval of the Amended APA and the transactions contemplated thereby. In the event there is an Auction and New Purchaser determines to stop bidding at any point, the individual members of New Purchaser shall each be deemed a Qualified Bidder and shall be entitled to submit bids for the Acquired Assets.

(g)     If there is a successful Competing Offer for the Acquired Assets (an "Alternate Transaction"), such successful bidder(s) shall have such rights and responsibilities of New Purchaser, as set forth in the Modified Purchase Agreement, or the Amended APA, as applicable with appropriate modifications for (i) the identity of the successful bidder and (ii) the purchase price as the same shall have been increased at the Auction.

(h)     In the event that the Court enters a Final Order approving an Alternate Transaction, then New Purchaser shall be entitled to and Debtors shall pay to New Purchaser at the consummation of an Alternate Transaction 3% of the Cash Purchase Price and Assumed Cure Costs (the "Breakup Fee"). The Breakup Fee is intended to cover opportunity costs

incurred by New Purchaser in pursuing and negotiating this Agreement and the transactions contemplated hereby, and is considered by the Parties to be reasonable for such purposes. The Breakup Fee shall be paid from the first sale proceeds of an Alternate Transaction. The claims of New Purchaser to the Breakup Fee shall constitute an administrative expense against the Debtors' bankruptcy estates under the applicable provisions of the Bankruptcy Code.

(i)     In addition to any Breakup Fee that may be payable pursuant to the Amended APA, upon (i) any event in which the Breakup Fee is payable, or (ii) the Amended APA is terminated by New Purchaser pursuant to Sections 8.1, other than Section 8.1(m) and 8.1(q), the Debtors  shall reimburse New Purchaser the actual and necessary expenses, including reasonable attorney's fees, incurred in connection with negotiation and entry into the Amended APA, due diligence with respect to the transactions contemplated by the Amended APA, and obtaining Bankruptcy Court approval of the Amended APA, in an amount not to exceed $400,000 (the "Expense Reimbursement"). The claims of New Purchaser to the Expense Reimbursement shall constitute an administrative expense against the Debtors' bankruptcy estate under the applicable provisions of the Bankruptcy Code.

(j)     In the event that a Competing Offer is the Successful Bidder and such Successful Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtors (but not as liquidated damages, the Debtors reserving the right to pursue all remedies that may be available to them) and the Debtors shall be free to consummate the proposed transaction with the next highest bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtors may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Bankruptcy Court.

(k)     All bids for the purchase of the Debtors' assets shall be subject to approval of the Bankruptcy Court.

(l)     No bids shall be considered by the Debtors or the Bankruptcy Court unless a party submitted a Competing Offer in accordance with the Bidding Procedures and participated in the Auction. The Debtors, in their absolute discretion, may reject any Competing Offers not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules of the Court, or contrary to the best interests of the Debtors and parties of interest.

(m)     All bids (other than those of the Successful Bidder and Backup Bidder) are irrevocable until the earlier of (A) ninety (90) days

following entry of the Sale Order (defined below) and (B) closing with the Successful Bidder.

(n)    All bids are subject to such other terms and conditions as are announced by the Debtors at the outset of the Auction.

(o)    Any overbid by the New Purchaser at the Auction will be credited with the full amount of the Bidding Protections.

## BIDDING PROTECTIONS

31.    The proposed Amended APA contemplates the payment of certain protections, including the Breakup Fee and Expense Reimbursement (collectively, the "Bidding Protections"), in certain circumstances.  The Debtors request the Court grant the proposed Bidding Protections administrative expense priority pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, which shall be payable solely from the first proceeds of an Alternate Transaction or as otherwise provided for in the Amended APA.  The Amended APA provides that if the proposed Bidding Protections are not approved by the Court, New Purchaser shall have the right, but not the obligation, to not enter into the Amended APA and none of the parties shall have any further obligations to the other.

32.    The Debtors submit that (a) approval of the proposed Bidding Protections is an integral part of the Amended APA, (b) in the absence of the Debtors' obligation to pay the Bidding Protections, New Purchaser will not enter into the Amended APA, (c) the entry into the Amended APA is necessary for the preservation of the Debtors' estates and is beneficial to the Debtors, their estates, creditors and other parties in interest, and (d) the Bidding Protections are reasonable in relation to New Purchaser's efforts and the amount of consideration contemplated by the Amended APA.

33.    The efforts of New Purchaser have increased the chances that the Debtors will receive the highest or otherwise best offer for the Acquired Assets by establishing a minimum bid

for other bidders, subjecting the Acquired Assets to an open auction and serving as a catalyst for other potential or actual bidders.  Thus, the Bidding Protections benefit the Debtors, their estates, their creditors and all other parties in interest.

34.    As stated above, New Purchaser is unwilling to commit to hold open its offer to purchase the Acquired Assets under the terms of the Amended APA unless the Bidding Protections are approved.  Accordingly, the Debtors request that the Court approve the Bidding Protections and authorize payment of the Breakup Fee and Expense Reimbursement pursuant to the terms and conditions of the Amended APA.

## ASSUMPTION AND ASSIGNMENT AND REJECTION OF EXECUTORY CONTRACTS AND LEASES

### A.    Transferred Contracts

35.    There are only 11 potential Transferred Contracts, comprising eight (8) nonresidential real property leases and three (3) equipment leases.  The Debtors and/or the New Purchaser will seek to engage in good-faith negotiations with the relevant counterparties in connection with the assumption and assignment of the applicable contracts and leases.  The Debtors, however, may seek to reject any such contracts and/or leases in their reasonable business judgment (subject to the terms of the Amended APA) to the extent that the parties are unable to agree to significant economic concessions from the applicable counterparties.  The Debtors reserve any and all rights with respect to any of their contracts, leases, other agreements, and related documents (including, without limitation, the Transferred Contracts and the Cure Costs).

36.    In connection with the Amended Sale Transaction, the Debtors seek authority under section 365 of the Bankruptcy Code to (a) assume and assign the Transferred Contracts, and (b) execute and deliver to New Purchaser (or the Successful Bidder, as the case may be) such

documents or other instruments as may be necessary to assign and transfer the Transferred Contracts as of the date of the Closing on the Amended APA (and expressly subject to Closing).

37.     By and through this Amended Motion, the Debtors are seeking authority to assume any and all Transferred Contracts (as defined in the Amended APA) following and subject to the Closing, and to assign all such contracts to New Purchaser.  The Debtors seek the authority to assume and assign to New Purchaser any and all of the Transferred Contracts which New Purchaser in its sole discretion elects to assume and gives notice of the same to the Debtors.

38.     To effectuate the assumption/assignment process, the Debtors propose to serve a notice on the non-debtor parties to the Transferred Contracts of the potential assumption and assignment of the Transferred Contracts (the "Assignment Notice"), advising each such party of the Debtors' interest to assume and assign such executory contract.  The Assignment Notice shall be served no later than fifteen (15) days prior to the Sale Objection Deadline (defined herein).  The list of Transferred Contracts attached to the Assignment Notice, which comprises all of the Debtors' executory contracts, except for those specifically excluded from the Acquired Assets, will set forth (a) the name and address of the counterparties to the executory contracts proposed to be assumed and assigned to New Purchaser or its designee and (b) the nature of the contract. Further, on or before the date that is two (2) business days after the Auction, the Debtors shall file a notice setting forth the amount of any Cure Costs that the Debtors believe to be due and owing as reflected on their books and records (such notice, the "Cure Notice"), which notice shall be served on all non-Debtor parties to the Transferred Contracts that are impacted by the Cure Notice. However, the inclusion of any agreement as a contract or lease on the Assumption Schedule and/or Cure Notice does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under the Bankruptcy Code, and the Debtors

expressly reserve the right to challenge the status of any agreement included as an Transferred Contract.

39.    Under the terms of the Amended APA, New Purchaser is responsible for the Assumed Cure Costs.

40.    Any non-Debtor party who objects to the assumption of any Transferred Contract solely on the basis of adequate assurance of future performance, state with specificity the nature of the objection not later than the Sale Objection Deadline as provided for below (any such objection, an "Adequate Assurance Objection").  Any Adequate Assurance Objections must be (a) filed with the Court and (b) served upon (i) the proposed attorneys for the Debtors, Zeichner Ellman & Krause LLP, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 (Attn:  Nathan Schwed), (ii) the attorneys for the New Purchaser, (a) Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036 (Attn: Tracy L. Klestadt) and (b) Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, New York  10019-6022 (Attn. Samuel S. Kohn and James A. Copeland), (iii) the Office of the United States Trustee for the Eastern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: William Curtin) and (iv)  proposed counsel for the Committee, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036 (Attn: Kevin Nash) (collectively, the "Notice Parties"),  so as to be actually received no later 4:00 p.m. on November [13], 2018 (the "Sale Objection Deadline").

41.    With respect to the Cure Notice, all non-Debtor parties to the Transferred Contracts shall have until the date that is seven (7) business days after the filing of the Cure Notice (the "Cure Objection Deadline") to file and serve on each of the Notice Parties an objection to the proposed Cure Costs, if any, with respect to any Transferred Contracts (a "Cure Objection"), and such

counterparty's Cure Objection must set forth (i) the basis for the objection, and (ii) with specificity, the amount the party asserts as the correct Cure Cost; provided, that, to the extent a counterparty files a Cure Objection, such counterparty shall also provide to the Debtors appropriate documentation in support of the alleged alternative Cure Cost.

42.     If no objection to the assumption and assignment (including any objection based on adequate assurance of future performance or Cure Costs) is timely received in accordance with the preceding paragraphs, or if a timely objection is received but is not in compliance with the foregoing requirements, any non-Debtor party to a Transferred Contract shall be barred and permanently enjoined from asserting any amounts in excess of the Cure Cost set forth in its Assignment Notice.

43.     The Assignment Notice may be amended at any time prior to the Closing Date to add or remove a Transferred Contract.  In such event, the Debtors shall give and serve a notice of amendment (the "Amendment Notice"), reflecting appropriate changes to the Assumption Schedule, on all counter-parties to the Transferred Contracts removed or added to, or otherwise modified by, the amendment to the Assumption Schedule.

44.     In an effort to provide the most up-to-date information to non-debtor parties to the Transferred Contracts, in the event New Purchaser is not the Successful Bidder at the Auction, the Debtors will use their reasonable best efforts to provide non-Debtor parties to the Transferred Contracts with the identity of the Successful Bidder prior to the Sale Hearing. Otherwise, the non-Debtor parties to the Transferred Contracts may wish to plan to attend the Sale Hearing.

45.     Any non-Debtor party to a Transferred Contract shall have the right to request adequate assurance of performance by New Purchaser of such Transferred Contract either by contacting New Purchaser through its attorneys, or filing, prior to the deadline for objecting to the

proposed Sale Order, such request with the Court and serving the Notice Parties, so as to be actually received no later than the Sale Objection Deadline, indicating what adequate assurance it requires from New Purchaser.

46.     If no such requests for adequate assurance are timely made or filed, New Purchaser shall be deemed to have provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code.  If any such requests are filed, the Court, at the Sale Hearing, shall determine whether New Purchaser has provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code.

47.     The Debtors believe that the suggested procedures and deadlines are fair and reasonable, and will provide sufficient notice to the non-Debtor parties to the Transferred Contracts.  These procedures are designed to provide certainty to the Debtors and the non-Debtor parties to the Transferred Contracts regarding their obligations and rights in respect of section 365 of the Bankruptcy Code.  Accordingly, the Debtors request that the Court approve the foregoing procedures and deadlines.

## NOTICE OF SALE, AUCTION AND BIDDING PROCEDURES

48.     The Debtors, no later than three (3) business day after entry of the Bidding Procedures Order, will serve a copy of the Bidding Procedures Order and all exhibits attached thereto upon the following persons by first-class mail, postage prepaid: (i) the Office of the United States Trustee; (ii) the attorneys for the Committee; (iii) the attorneys for New Purchaser; (iv) all counterparties to the Transferred Contracts; (v) all parties who have made an expression of interest in acquiring the Acquired Assets or the Business within twelve (12) months prior to the date of the Amended Motion; (vi) all known persons holding a lien on any of the Acquired Assets and/or their attorneys; (vii) all taxing authorities that have jurisdiction over the Acquired Assets; and (viii) all

parties who have requested notice in the Chapter 11 Cases (collectively, the "<u>Bidding Procedures Parties</u>").

49.     In addition, no later than three (3) business days after entry of the Bidding Procedures Order, the Debtors shall cause the form of auction notice, a copy of which is annexed to the Bidding Procedures Order as <u>Schedule 2</u> to be (i) served upon the Bidding Procedures Parties, and (ii) served upon all known creditors and all known parties in interest in these Chapter 11 Cases (collectively, the "<u>Auction Notice Parties</u>").

50.     The Debtors believe that the foregoing notice to the Auction Notice Parties is sufficient to provide effective notice of the Bidding Procedures, the Auction and the proposed Sale to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation in the Auction while minimizing the costs to the estates. Accordingly, the Debtors request that the Court find that notice in this manner is sufficient and that no further notice of the Auction, the Bidding Procedures or the proposed Sale is required.

## BASIS FOR RELIEF REQUESTED

A.     **The Proposed Sale is Within the Debtors' Sound Business Judgment and Should Therefore Be Approved**

51.     The Debtors submit that ample authority exists for the approval of the Amended Sale Transaction to New Purchaser pursuant to the Amended APA, or to such other purchaser submitting a higher and better offer for the Acquired Assets.  Section 363(b) of the Bankruptcy Code permits a debtor to sell assets outside the ordinary course of its business.  That section provides in pertinent part, "[t]he trustee,[5] after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  While Section

---

[5] Pursuant to Section 1107(a) of the Bankruptcy Code, the debtor in possession has all of the powers of a trustee (except the power to investigate the debtor's own financial affairs).

363(b) does not provide any standards to be applied to a debtor's request to sell assets, a wide body of case law has evolved containing the judicial standards governing sales of assets.

52.     In In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), one of the seminal and most widely followed cases dealing with asset sales, the Second Circuit determined that a sale of assets could be approved if the debtor could demonstrate an "articulated business justification" for the sale.  722 F.2d at 1070.  The Second Circuit further held that the factors to be considered in determining whether a sound business reason exists include the following:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, *most importantly perhaps, whether the asset is increasing or decreasing in value.*

Id. at 1071 (emphasis supplied).

53.     The Lionel decision has been widely accepted and applied by numerous other courts facing a debtor's request to sell assets, including requests to approve a sale of certain of the assets of a debtor's estate.  See, e.g., In re the Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); In re Eng'g Prod. Co., 121 B.R. 246 (Bankr. E.D. Wis. 1990); In re Thomson McKinnon Sec., Inc., 120 B.R. 301 (Bankr. S.D.N.Y. 1990); In re Channel One Communications, Inc., 117 B.R. 493 (Bankr. E.D. Mo. 1990); In re Brethren Care, 98 B.R. 927 (Bankr. N.D. Ind. 1989).  As will be demonstrated below, application of the above-listed factors demonstrates that approval of the Amended APA is warranted at this time.

54.     In addition to requiring sound business reasons to approve a sale pursuant to section 363(b) of the Bankruptcy Code, many courts have required a showing that the price to be obtained for assets be fair and reasonable; that the sale to the proposed purchaser was negotiated in good faith; and that it does not unfairly benefit insiders, the purchaser, or a certain creditor or class of

creditors.  See, e.g., In re Channel One Communications, 117 B.R. at 494-97; In re Indus. Valley Refrig. & Air Cond. Supplies, Inc., 77 B.R. 15 (Bankr. E.D. Pa. 1987).

55.     The Debtors and New Purchaser negotiated in good faith, at arms' length, and with a view towards maximizing the value of the Debtors' estates for all creditors, rather than to benefit insiders or a particular creditor.

56.     The Amended APA is subject to higher and better offers, thereby ensuring that the best possible offer has been or will be received.

57.     Many courts require that "fair and accurate notice" be given of the proposed sale under section 363(b) of the Bankruptcy Code.  See, e.g., In re Delaware & Hudson Ry., 124 B.R. 169, 176 (D. Del. 1991); Channel One 117 B.R. at 496 (Bankr. E.D. Mo. 1990); Naron & Wagner, Chartered, 88 B.R. 85, 88 (Bankr. D.Md. 1988).  Fair and accurate notice should inform all interested parties of the liquidation of the debtor's business; disclose accurately the terms of the sale; explain the effect of the sale upon the debtor's business; and explain why the sale is in the best interests of the debtor's estate.  Delaware & Hudson, 124 B.R. at 180; see also, Naron & Wagner, 88 B.R. at 88.

58.     The Debtors submit that the notice given here alerted parties in interest to the sale contemplated by the Amended APA, described and explained all material terms thereof, and explained the effect of the sale on the Debtors' business.

B.     **The New Purchaser is a Good Faith Purchaser and is Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

59.     Section 363(m) of the Bankruptcy Code provides:  "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the

appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C.

§ 363(m).

60.      Although the Bankruptcy Code does not define "good faith," in <u>In re Colony Hill</u>

<u>Assocs.</u>, 111 F.3d 269 (2d Cir. 1997) the Second Circuit held that:

> The "good faith" component of the test under § 363(m) speaks to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

111 F.3d at 276 (quoting <u>In re Rock Industries Machinery Corp.</u>, 572 F.2d 1195, 1198 (7th Cir.

1978)) (internal quotations omitted).

61.      As set forth above, New Purchaser was selected by the Debtors after engaging

several parties and determining that the terms of New Purchaser's bid were the only viable option.

The Amended APA is a product of extensive arms-length negotiations and was not in any way

tainted by fraud, collusion or bad faith.  Accordingly, the Debtors request that the Court make a

finding that New Purchaser is entitled to the protections of section 363(m) of the Bankruptcy Code.

**C.      The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

62.      The Debtors seek authorization to sell the Acquired Assets to New Purchaser free

and clear of all liens, claims and encumbrances, except as expressly permitted by the Amended

APA.  Nonetheless, the Acquired Assets may be sold free and clear of liens in accordance with

section 363(f) of the Bankruptcy Code, which provides, in pertinent part:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
>> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>>
>> (2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

63.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the Amended Sale Transaction free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and other interests. See In re Grubb & Ellis Co., Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); In re Borders Group, Inc., 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)). The Debtors submit that the Amended APA provides that the proposed Purchase Price is greater than the aggregate value of all such liens.  As such, the rights of secured creditors are preserved.  Thus, the Acquired Assets may be sold free and clear of such liens pursuant to section 363(f)(3) of the Bankruptcy Code.  In re General Bearing Corp., 136 B.R. 361 (Bankr. S.D.N.Y. 1992); In re Oneida Lake Development, Inc., 114 B.R. 352 (Bankr.  N.D.N.Y. 1990).

### D.     The Court Should Waive or Reduce the Fourteen-Day Stay Periods Required by Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure

64.     Pursuant to Bankruptcy Rule 6004(g), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order.  See FED. R. BANKR. P. 6004(g).  The purpose of Bankruptcy Rule 6004(g) is to provide sufficient time for an objecting party to appeal before the order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(g).

65.     Although Bankruptcy Rule 6004(g) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., 6004.09 (L. King, 15th rev. ed. 2005). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

66.     Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for 14 days, unless the court orders otherwise.

67.     To preserve the value of the Acquired Assets and limit the costs of administering and preserving the Acquired Assets, it is critical that the Debtors close the Amended Sale Transaction as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtors hereby requests that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(g) and 6006(d), or in the alternative, if an objection to the sale or to the assignment of a contract or lease is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal to allow the sale to close as provided under the Amended APA.

E. **The Assumption and Assignment of Transferred Contracts Should be Authorized**

68.     Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(f) of the Bankruptcy Code provides that a debtor in possession may assign an executory contract or unexpired lease of the debtor only if (a) the debtor in possession assumes

such contract or lease in accordance with the provisions of section 365, and (b) adequate assurance

of future performance by the assignee of such contract or lease is provided. 11 U.S.C. § 365(f)(2).

69.    Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for

assuming an unexpired lease or executory lease or executory contract of a debtor.  This subsection

provides:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A) cures or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

70.    The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical, pragmatic construction."  EBG

Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139

B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), aff'd, 993 F.2d 300 (2d Cir.1993).

71.    When an executory contract or lease is to be assumed and assigned, adequate

assurance may be provided by, among other things, demonstrating the financial health of the

assignee and its experience and ability in managing the type of enterprise or property assigned.

See e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate

assurance of future performance is present when a prospective assignee of a lease from debtor has

financial resources and has expressed a willingness to devote sufficient funding to the business in

order to give it a strong likelihood of success).

72.     To the extent that any defaults exist under any Transferred Contracts, the New Purchaser will cure (in an amount not to exceed $3,450,000 of the Cure Costs), or provide adequate assurance of cure of, such defaults within the meaning of section 365(b)(1)(A) and in accordance with the Amended APA.  Moreover, the Debtors will demonstrate facts at the Sale Hearing that show New Purchaser's (or the Successful Bidder's, as the case may be) financial credibility, experience in the industry, and willingness and ability to perform under the Transferred Contracts. Therefore, the Sale Hearing will provide the Court and other interested parties with an opportunity to evaluate and, if necessary, challenge the ability of New Purchaser (or the Successful Bidder, as the case may be) to provide adequate assurance of future performance under the Transferred Contracts. Accordingly, the Debtors submit that the assumption and assignment of the Transferred Contracts as set forth herein should be approved.

F.      **Conducting an Auction Pursuant to the Bidding Procedures is in the Best Interests of the Debtors' Estates and Their Creditors**

73.     In order to maximize the value of the Acquired Assets for the benefit of the Debtors, their creditors and their chapter 11 estates, the Debtors seek to implement a competitive bidding process typical for transactions of this size and nature and designed to generate a maximum recovery.  The Debtors believe that the Auction and proposed Bidding Procedures will encourage participation by financially capable bidders that demonstrate the ability to close a transaction. Furthermore, the Bidding Procedures are consistent with other procedures previously approved within this district, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.  See e.g., In re Kmart, Case No. 02-B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002); In re Global Crossing, Case No. 02-40188 (S.D.N.Y. March 25, 2002) (REG); In re Randall's Island Family Golf Ctrs., Inc., 261 B.R. 96 (S.D.N.Y. 2001); In re Integrated Resources, Inc., 147 B.R. 650 (S.D.N.Y. 1992).

G.     **Bidding Protections Are Warranted**

74.     The Debtors propose that if overbidding occurs at the Auction, New Purchaser shall have the right, but not the obligation, to participate in the overbidding subject only to the limitations provided by the Bidding Procedures.  However, to compensate New Purchaser for serving as a "stalking horse," thereby subjecting its bid to better or higher offers, the Debtors and New Purchaser seek authority for the Debtors to pay New Purchaser the Breakup Fee and Expense Reimbursement if an Alternate Transaction is approved or consummated or there is a material breach by the Debtors preventing a Closing as provided in the Amended APA.  The Debtors and New Purchaser believe that the Bidding Protections are (a) fair and reasonable, given the benefits to the estates of having a definitive Amended APA and the risk to New Purchaser that a third-party offer may ultimately be accepted and (b) are necessary to preserve the value of the Debtors' estates.

75.     Bidding incentives such as the Breakup Fee encourage a potential purchaser to invest the requisite time, money and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process.  See e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding bidding incentives may be "legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); In re Marrose Corp., 89 B 12171-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "[a]greements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

76.     The Debtors submit that the Bidding Protections are a normal and necessary component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code.  See e.g., In re Kmart, Case No. 02 B02474 (SPS) (Bankr. N.D. Ill. May 10, 2002)

(authorizing a termination fee and bid protections for potential bidders); In re Comdisco, Inc., Case

No. 01 24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (approving a termination fee as, *inter alia*, an

actual and necessary cost and expense of preserving the debtor's estate, of substantial benefit to

the debtor's estate, and a necessary inducement for, and a condition to, the proposed purchaser's

entry into the Amended APA); In re Integrated Resources, Inc., 147 B.R. at 660 (noting that break-

up fees may be legitimately necessary to convince a "white knight" to offer an initial bid by

providing some form of compensation for the expenses such bidder incurs, and the risks such

bidder faces by having its offer held open, subject to higher and better offers); In re Crowthers

McCall Pattern, Inc., 114 B.R. 877 (Bankr. S.D.N.Y. 1990) (approving an overbid requirement in

an amount equal to the approved break up fee); In re Kupp Acquisition Corp., Case No. 96 1223

(PJW) (Bankr. D. Del. March 3, 1997).

        77.     Here, the proposed Breakup Fee is 3% percent of the Cash Purchase Price and

Assumed Cure Costs (or $411,500) and the Expense Reimbursement cannot exceed $400,000.

Courts in this District have approved termination or breakup fees in approximately the same

amount as measured in proportion to the proposed purchase price offered for a debtor's assets. See

In re Long Beach Medical Center, et al., Case No. 14-70593 (AST) (Bankr. E.D.N.Y. Mar. 13,

2014) (approving termination fee in the amount of $630,000); In re Personal Communications

Devices, LLC, et al., Case No. 13-74303 (AST) (Bankr. E.D.N.Y. Sept. 16, 2013) (approving

termination fee in the amount of $3,500,000 in transaction with a proposed purchase price of

$105,250,000); In re Sound Shore Medical Center of Westchester, et al., Case No. 13-22840

(RDD) (Bankr. S.D.N.Y. June 25, 2013) (conditionally approving a break-up fee of 3% on a $58.75

million purchase price); In re New York Westchester Square Medical Center, Case No. 06-13050

(SMB) (Bankr. S.D.N.Y. Feb. 1, 2013); (approving a break-up fee of 3% on a $15.3 million assets

sale); In re Cabrini Med. Ctr., Case No. 09-14398 (AJG) (Bankr. S.D.N.Y. Dec. 30, 2009) (approving a break-up fee of 3.75% for an $80 million sale); In re Bearingpoint, Inc. et al., No. 09-10691 (REG) (Bank. S.D.N.Y. Apr. 7, 2009) (approving a break-up fee of approximately 3% on a $350 million sale).  Additionally, courts routinely approve a purchaser's request for reasonable reimbursement of its legal and other advisor fees in connection with a stalking horse bid.

78.     Thus, the Breakup Fee and Expense Reimbursement are within the range of fees typically paid in other significant sales transactions that have been consummated in a bankruptcy setting. Further, the amount of the Breakup Fee and Expense Reimbursement is reasonably calculated to compensate New Purchaser (a) for committing the time to perform due diligence, (b) for lost opportunity in being bound to a transaction that could be topped in a competitive auction process and (c) for serving as a "stalking horse" to encourage the submission of other bids. Accordingly, the Debtors believe that the Bidding Protections should be approved.

## NOTICE

79.     No trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Amended Motion will be given to (i) the Office of the United States Trustee; (ii) the attorneys for the Committee; (iii) the attorneys for New Purchaser; (iv) all counterparties to the Transferred Contracts; (v) all parties who have made an expression of interest in acquiring the Acquired Assets or the Business within twelve (12) months prior to the date of the Amended Motion; (vi) all known persons holding a lien on any of the Acquired Assets and/or their attorneys; (vii) all taxing authorities that have jurisdiction over the Acquired Assets; and (viii) all parties who have requested notice in the Chapter 11 Cases.  Additional notices will be provided in accordance with the notice provisions contained herein. The Debtors submit that such notice is sufficient and requests that this Court find that no other or further notice is necessary.

## PRIOR REQUEST

80.     The Debtors previously sought approval of the SKNY APA and the Initial Sale Transaction.  No other previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter orders, substantially in the form annexed hereto, granting the Amended Motion and such other relief as may be just and proper.

Dated:   New York, New York
         October 15, 2018

                                   **ZEICHNER ELLMAN & KRAUSE LLP**

                        By:   _/s/ Nathan Schwed_____
                              Nathan Schwed
                              1211 Avenue of the Americas, 40th Floor
                              New York, New York 10036
                              Telephone: (212) 223-0400
                              Facsimile: (212) 753-0396
                              Email:  nschwed@zeklaw.com

                              *Proposed Attorneys for Debtors and Debtors-*
                              *   in-Possession*