Michael D. Nord, Esq. (*pro hac vice*)
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5072
Mnord@gebsmith.com

*Counsel for Axos Bank*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Seasons Corporate LLC, *et al.*, | Case No. 18-45284-nhl |
| Debtors.[1] | (Jointly Administered) |

---------------------------------------------------------------------x

**RESPONSE TO DEBTORS' FIFTH OMNIBUS OBJECTION SEEKING TO DISALLOW CERTAIN UNSECURED CLAIMS FILED AGAINST THE DEBTORS**

Axos Bank f/k/a BofI Federal Bank ("Axos"), by its undersigned counsel, submits this Response to the Debtors' Fifth Omnibus Objection Seeking to Disallow Certain Unsecured Claims Filed Against the Debtors (the "Claims Objection") with respect to the Debtors' objections to the claims filed by Axos. In support of its Response, Axos states as follows:

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Blue Gold Equities LLC (7766), Central Avenue Market LLC (7961), Amsterdam Avenue Market LLC (7988), Wilmot Road Market LLC (8020), Seasons Express Inwood LLC (1703), Seasons Lakewood LLC (0295), Seasons Maryland LLC (1895), Seasons Clifton LLC (3331), Seasons Cleveland LLC (7367), Lawrence Supermarket LLC (8258), Upper West Side Supermarket LLC (8895) and Seasons Corporate LLC (2266) (collectively the "Debtors"). The mailing address for the Debtors, solely for purposes of notices and communications, is: 5 Doughty Boulevard, Inwood, NY 11096.

# I.
## Preliminary Statement

Axos was an equipment lender to Debtor, Seasons Maryland, LLC ("Seasons Maryland"). Seasons Maryland's obligations to Axos were secured by various equipment (the "Equipment") and were absolutely and unconditionally guaranteed by Debtor, Seasons Corporate, LLC ("Seasons Corporate"). Axos timely filed two (2) proofs of claim: (a) a claim against Seasons Maryland, as borrower; and (b) a claim against Season Corporate, as guarantor. During the course of these proceedings, the Debtors sold the Equipment pursuant to Section 363 of the Bankruptcy Code and Axos received various payments in connection therewith. Axos therefore amended its two proofs of claim after the bar date to reduce the amounts claimed based on payments it received in connection with the sale. No other amendments were made to the claims, however.

In the Claims Objection, the Debtors seek disallowance of Axos's claims because they assert: (a) that the claims are duplicative of one another; (b) the claims were untimely; and (c) the claims were assumed and cured. Each of these contentions lacks merit because:

- Each of the claims is separate and distinct; one claim is against Seasons Maryland as borrower and another is against Seasons Corporate as guarantor.

- The claims were timely filed. Both claims were filed months before the bar date. Although the claims were amended after the bar date, the amendments solely **reduced** the amount of the claims based on payments that were received after the claims were originally filed. Under the circumstances, the amended claims plainly relate back to the date of the original filing.

- The Debtors did not assume and cure the claims. Axos extended financial accommodations to the Debtors that are incapable of being assumed under Section 365 of the Bankruptcy Code. This is evidenced by the Court's order authorizing the sale of the Equipment, which plainly treats Axos as a secured creditor whose collateral is being sold. Axos is a secured

creditor with a deficiency claim and is entitled to have its claim allowed for the deficiency that remains after the sale of its collateral.

The Court should overrule the objections to Axos's claims.

## II.
## Background

**A.  The Loans.**

1. Crestmark Equipment Finance, LLC ("Crestmark") extended two separate credit facilities ("Loans") to Seasons Maryland to finance the Equipment previously used by Seasons Maryland in the operation of its business.

2. The Loans are evidenced by: (a) that certain Equipment Finance Agreement, No. 170041-000, effectively dated January 20, 2017, by and between Crestmark and Seasons Maryland ("EFA 041"); and (b) that certain Equipment Finance Agreement, No. 170605-000, effectively dated January 20, 2017, by and between Crestmark and Seasons Maryland ("EFA 605" and collectively with EFA 041, the "EFAs").

3. Seasons Maryland's obligations under the EFAs were secured by, among other things, the Equipment. Axos's security interest in the Equipment was perfected by the filing of UCC-1 financing statements ("Financing Statements").

4. Seasons Corporate absolutely and unconditionally guaranteed repayment of all of Seasons Maryland's obligations in connection with the EFAs pursuant to the terms of a Guaranty Agreement effectively dated January 20, 2017 (the "Guaranty").

5. The EFAs, Financing Statements, Guaranty and all other documents evidencing or securing repayment of the Loans are collectively referred to as the "Loan Documents." True and accurate copies of the Loan Documents are attached to the Proofs of Claim filed by Axos in this case and were also filed at D.E. 114-1 to 114-5.

6.      Axos is the successor-in-interest to Crestmark under the Loan Documents.

**B.    The Sale of the Equipment.**

7.      Pursuant to an order of the Court entered at D.E. 254 (the "Sale Order"), the Debtors were authorized to sell various assets – including the Equipment – pursuant to Section 363 of the Bankruptcy Code. A copy of the Sale Order is attached hereto as Exhibit 1.

8.      In connection with the Sale Order, Axos was to receive the following payments: (a) Five Hundred Thousand Dollar ($500,000.00) payment at closing (the "Closing Payment"); and (b) an additional Five Hundred Thirteen Thousand Three Hundred Fifty Dollars ($513,350.00) from the purchaser subsequent to the closing (the "Purchaser Payment"). Upon receipt of both the Closing Payment and the Purchaser Payment, Axos was obligated to release its lien against the Equipment.

**C.    The Proofs of Claim.**

9.      On March 11, 2019, prior to the June 7, 2019 bar date, Axos filed two proofs of claim for the unpaid amounts due and owing under the EFAs and the Guaranty: (a) a claim against Seasons Maryland, as borrower (Claim Number 6) (the "Original Seasons Maryland Claim"); and (b) a claim against Seasons Corporate, as guarantor (Claim Number 57) (the "Original Seasons Corporate Claim" and collectively with the Original Seasons Maryland Claim, the "Original Claims"), each in the amount of $1,865,645.00. Copies of the Original Claims are attached hereto as Exhibit 2.

10.      The amounts claimed in the Original Claims reflected receipt of the Closing Payment, but not of the Purchaser Payment, because at the time of filing, the Purchaser Payment was not yet due and owing and had not been received.

11. Subsequent to the filing of Original Claims, Axos received the Purchaser Payment. Additionally, Axos had received additional adequate protection payments that had not been accounted for in the Original Claims.

12. On July 26, 2019, Axos filed two amended proofs of claim to reduce the amount of the Original Claims because of Axos's receipt of the above-referenced payments: (a) an amendment to claim number six against Seasons Maryland, as borrower (the "Amended Seasons Maryland Claim" and collectively with the "Original Seasons Maryland Claim" the "Seasons Maryland Claim"); and (b) an amendment to claim number fifty-seven against Seasons Corporate, as guarantor (the "Amended Seasons Corporate Claim" and collectively with the Original Seasons Corporate Claim, the "Seasons Corporate Claim"), each in the amount of $1,352,295.00. Copies of the Amended Seasons Maryland Claim and Amended Seasons Corporate Claim (collectively, the "Amended Claims") are attached hereto as Exhibit 3.[2]

13. Attached hereto as Exhibit 4 is the claims agent's records of the Original Claims and Amended Claims, which are consistent with the above recitation of facts.

**D.    The Claims Objection.**

14. In the Claims Objection, the Debtors seek to disallow each of Axos's claims.

15. According to Exhibit "A" to the Claims Objection, the Debtors assert the claims should be disallowed because: (a) Claim 57 (the Seasons Corporate Claim) was amended by Claim 6 (the Seasons Maryland Claim); (b) Claim 6 (the Seasons Maryland Claim) was assumed and cured; and (c) Claim 6 (the Seasons Maryland Claim) was untimely. *See* D.E. 435-2 at p.1.

---

[2] Due to the voluminous nature of the exhibits to the proofs of claim, the copies of the proofs of claim attached hereto as Exhibits 2 and 3 do not contain the exhibits that were filed with the claims agent.

16. For the reasons set forth below, none of these assertions is correct and each of Axos's claims should be allowed.

### III.
### Law and Argument

**A.  The Seasons Maryland Claim did not amend the Seasons Corporate claim.**

17. The Debtors seek to disallow the Seasons Corporate Claim because they assert it was amended by the Seasons Maryland Claim.

18. As set forth *supra*, the Seasons Maryland Claim is the claim filed by Axos against Seasons Maryland for the amounts due and owing under EFAs. The Seasons Corporate Claim, conversely, was the claim filed by Axos against Seasons Corporate under the Guaranty for the amounts due thereunder.

19. The Seasons Maryland Claim did **not**, however, amend the Seasons Corporate Claim. Axos did amend both claims via the Amended Claims, but each claim pertains to entirely separate Debtors (Seasons Maryland and Seasons Corporate) under different theories of recovery.

20. And, because the Debtors' estates have not been substantively consolidated, Axos is entitled to assert its claims against both Seasons Maryland, as borrower (the Seasons Maryland Claim) and Seasons Corporate, as guarantor (the Seasons Corporate Claim). *See In re Nat'l Energy & Gas Transmission, Inc.,* 492 F.3d 297 (4th Cir. 2007); *see also In re Thomas*, 261 B.R. 848, 861 (Bankr. E.D. Va.), *rev'd on other grounds sub nom. Thomas v. Peyton*, 274 B.R. 450 (E.D. Va. 2001), *aff'd sub nom. In re Bunker*, 312 F.3d 145 (4th Cir. 2002).

21. The objection to the Seasons Corporate Claim should be overruled.

B.     **Axos timely filed the Seasons Maryland Claim.**

22.     The Debtors seek disallowance of the Seasons Maryland Claim because they assert it was untimely.   This objection also lacks merit.

23.     The bar date in these cases was June 7, 2019.  Axos filed the Original Claims (including the Original Seasons Maryland Claim) on March 11, 2019 – nearly three months prior to the bar date.  *See* Exhibit 4 (evidencing that claim number six was originally filed on March 11, 2019).

24.     Axos did amend the Original Seasons Maryland Claim after the bar date on July 26, 2019, but only to **reduce** the amounts claimed based on additional payments that had been received in connection with the sale of the Equipment and adequate protection payments.

25.     Neither the Amended Seasons Maryland Claim nor the Amended Seasons Corporate Claim introduced any new theories of recovery, however.  Indeed, the Amended Claims are almost mirror images of the Original Claims, **except that they reduce the amounts due and owing**.  *Compare* Exhibit 2, *with* Exhibit 3.  As such, the Amended Claims plainly relate back to the filing of the Original Claims.  *See generally In re Enron Corp.,* 419 F.3d 115, 133 (2d Cir. 2005) (holding that an amended proof of claim relates back to a claim where it, among other things, describes the original claim with greater particularity and allowing the amendment would be equitable).  *See also, e.g.*, *In re Fairmont Gen. Hosp., Inc.,* 569 B.R. 421, 429 (Bankr. N.D.W. Va. 2017) (amended proof of claim filed after bar date which merely described claim with greater particularity and reduced the total claim related back to original, timely filing); *In re Richter*, 478 B.R. 30, 39 (Bankr. D. Colo. 2012) (amendment to proof of claim related back to original filing where existence, nature and amount set forth in the amended claim was identical to what was set forth in the original claim).

26. Moreover, there is no purpose served by disallowing the Amended Claims, which are the only claims that were filed after the bar date. Doing so would only result in the Original Claims remaining of record in an amount greater than which Axos claims it is entitled. There is no prejudice in allowing the Amended Claims. To the contrary, the Debtors would be prejudiced by disallowing the Amended Claims and leaving the greater, increased Original Claims of record.

27. Axos timely filed the Seasons Maryland Claim and therefore the objection on untimeliness grounds should be overruled.

**C.    The Debtors did not assume and cure the EFAs.**

28. The Debtors final objection to Axos's claims is that the Seasons Maryland Claim was allegedly assumed and cured. The Debtors are incorrect.

29. A contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor may not be assumed under Section 365 of the Bankruptcy Code. *See* 11 U.S.C. § 365(c)(2).

30. The Loans are just that – loans secured by the Equipment. They are financial accommodations that the Debtors have no power under Section 365 of the Bankruptcy Code to assume. *See, e.g.*, *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372 (Bankr. D. Del. 2011) (an equipment lease which was in actuality a disguised security interest was a financial accommodation contract which could not be assumed or assigned).

31. Axos was a secured lender to the Debtors; it was a not a lessor under an equipment lease that could be assumed. The EFAs are not designated as equipment leases. Rather, as evidenced by the Loan Documents, the transaction was structured as a loan made by Axos to the Debtors secured by the Equipment.

32. That Axos was a secured creditor extending a financial accommodation and not a lessor granting a leasehold interest is evidenced by the Sale Order. The Debtors did not assume the EFAs and assign them to the purchaser under Section 365 of the Bankruptcy Code in connection with the sale. Rather, the Equipment was sold to the purchaser *subject to Axos's lien*:

> 4. Upon Closing, the Additional Acquired Assets transferred, sold and delivered to the Purchasers shall be free and clear of all Claims and Encumbrances of any person or entity to the fullest extent permissible under Bankruptcy Code section 363(f); provided, however, (a) that notwithstanding any provision hereof or the Additional Sale Agreements, with respect to all Leases assumed and assigned to Purchasers, on and after the Closing Date Purchasers assume such Leases in their entirety, including all rights, duties and obligations under such Leases in accordance with section 365 of the Bankruptcy Code, the terms of the Leases and applicable law, and (b) *the Axos Equipment (as hereafter defined) shall be sold subject to the liens of Axos thereon (the "Axos Liens") and the release of the Axos Liens shall be governed exclusively by Paragraph 5 hereof pertaining to the Axos Equipment.*
>
> 5. Notwithstanding anything in this Order, the Baltimore Agreement, or any other agreement or document evidencing the sale of the Additional Acquired Assets to the contrary, **none of the Additional Acquired Assets that are subject to the lien of Axos ("Axos Equipment") shall be sold free and clear of the Axos Liens.** The Baltimore Purchaser shall be obligated to remit to Axos at the Closing of the sale of the Baltimore Store the amount of Five Hundred Thousand Dollars ($500,000.00) (the "Axos Closing Payment"). Thereafter, the Baltimore Purchaser shall be obligated to remit to Axos the amount of Five Hundred and Thirteen Thousand, Five Hundred Dollars ($513,500.00) on or before June 1, 2019 (collectively with the Axos Closing Payment, the "Axos Purchase Price"), without payment of any interest. Until such time as the Axos Purchase Price is paid in full, the Baltimore Purchaser shall deal with the Axos Equipment and otherwise perform Seasons Maryland, LLC's obligations to Axos under the Equipment Finance Agreements No. 170041-000 and 170605-000, effectively dated January 20, 2017; provided, however, the Baltimore Purchaser's payment obligations shall be modified as set forth in this Paragraph 5. Upon full and timely payment of the Axos Purchase Price in accordance with the terms hereof, Axos shall be obligated to take all reasonable actions necessary to release the Axos Liens or, if requested by the Baltimore Buyer, to assign the Axos Liens to an entity designated by the Baltimore Buyer. For the avoidance of doubt, the Axos Equipment is not being sold to the Baltimore Purchaser free and clear of the Axos Liens pursuant to Section 363 of the Bankruptcy Code and Axos shall have no obligation to release the Axos Liens unless and until all conditions set forth in this paragraph have been satisfied.

(emphasis added).

33.     As evidenced by the above language (which the Debtors negotiated and agreed to), Axos was plainly treated as a secured creditor, and not a lessor under a lease.[3]

34.     Further evidencing that the Debtors did not assume and cure the EFAs is that there remains a substantial, outstanding deficiency. Prior to the sale of the Equipment, the Debtors were indebted to Axos in amounts in excess of $2.3 million under the EFAs. *See* Exhibit 3 (Rider to Amended Claims) at p. 1. To "cure" the defaults under the EFAs, the Debtors would have had to make a payment in such amount. *See* 11 U.S.C. § 365(a) (requiring as a condition to assumption that the debtor cure any default). They did not. Rather, the payments made by the Debtors and the purchaser aggregated less than $1.2 million, resulting in the substantial deficiency that is the subject of Axos's claims.

35.     Axos was an undersecured creditor whose collateral was sold pursuant to Section 363 of the Bankruptcy Code. Accordingly, Axos is entitled to assert a deficiency claim for the unsecured portion of its claims.[4]

---

[3] The fact that Axos is a secured creditor is further evidenced by the fact that the Debtors made adequate protection payments to Axos throughout the case for the use of the Equipment.

[4] Notably, Axos did not waive its deficiency claim in connection with the Sale Order like another of the Debtors' secured creditors, Presidential Bank, FSB, did. *See* Sale Order at ¶ 32.

## IV.
## Conclusion

36.     For all of the foregoing reasons, the objections to Axos's claims should be overruled and its claims, allowed in the amounts set forth in the Amended Claims.

Respectfully submitted,

*/s/ Michael D. Nord*
Michael D. Nord, Esq. (*pro hac vice*)
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5072
Mnord@gebsmith.com

*Counsel for Axos Bank*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of November, 2020, I electronically filed the foregoing *Response* via CM / ECF, which will send notice the filing to all counsel of record. I further certify that I caused the foregoing *Response* to be sent via e-mail to nschwed@zeklaw.com, knash@gwfglaw.com, and Rachel.Wolf@ usdoj.gov.

                                       */s/ Michael D. Nord*
                                       Michael D. Nord